UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
MOHAMMED AFFSER,

                     Petitioner,

         -against-

TIMOTHY J. MURRAY, Superintendent,
Gowanda Correctional Facility

                    Respondent.
-----------------------------------------------------X
DEARIE, Chief Judge.

**MEMORANDUM & ORDER**

04 CV 2715

Petitioner *pro se* Mohammed Affser seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The application is denied, and the petition is dismissed.

### Background

On March 13, 2000, after attending a school puppet show presented by the Child Abuse Prevention Program, petitioner's eight-year-old step-daughter reported to one of the program counselors and to her school guidance counselor that petitioner had been sexually abusing her for at least nine months. The child's school contacted the Administration of Children's Services, and ACS contacted the police.

Petitioner was arrested the next day, and an order of protection was issued prohibiting him from calling the child at home. Petitioner was charged with one count of second-degree course of sexual conduct against a child, three counts of first-degree sexual abuse, one count of endangering the welfare of a child, one count of first-degree criminal contempt, one count of second-degree criminal contempt, and one count of third-degree tampering with a witness.

At trial, the child testified that when her mother was at work, petitioner would touch her breasts, buttocks and vagina, and insert a finger in her vagina in a manner that did not cause her

pain.  Petitioner began abusing her during the summer after she finished second grade and continued into the following school year.  Much of the abuse occurred on Thursdays—the day that he was off from work and picked the child up from school.  The last instance of abuse occurred on March 2, 2000.  That morning, the child went to the school nurse complaining of a stomachache.  School records confirmed that petitioner signed her out at 10:20 a.m.  At home, petitioner took the child into the bedroom, put her on the bed, and kissed her breasts, squeezed her buttocks, and touched her vagina.  Eleven days later, on March 13, 2000, she attended the school puppet show after which she reported the abuse.  The child's mother, Michelle Affser, testified that shortly after petitioner's arrest, he admitted to her that he had fondled the child.  She also testified that, despite the issuance of the protective order, petitioner repeatedly called the house.

Petitioner's counsel argued to the jury that the charges were trumped up by Michelle for her financial gain and that the child was sufficiently sexually sophisticated to have fabricated the charges.  Counsel further argued that if petitioner had abused the child, she would have understood the significance of his actions and reported him immediately.  Petitioner testified that he transferred ownership of his house to Michelle in May 1999 to protect it from claims against him in a pending lawsuit relating to a failed restaurant business.  In exchange, Michelle was supposed to have paid him the equivalent of the equity he had in the house—$150,000.  In June 1999, petitioner also transferred $34,000 to Michelle for a college fund for her children.  Their relationship then began to deteriorate because of financial disagreements, and they discussed divorce.  Petitioner claimed that he contacted his trial counsel in December of 1999 to ask about initiating a lawsuit against her to prevent her from selling the house.  He admitted, however, that

no lawsuit was filed until July of 2000, after his arrest. In addition, he testified that beginning in November or December of 1999 he and Michelle had sex on occasion in the family bedroom at night while the child was awake. He claimed that when the child saw him and Michelle hugging and kissing, she asked that he "do that" to her. (Tr. 1261.)

Petitioner also testified that he was never alone with the child on his days off during the alleged period of abuse and attempted to account for his activities on each of the Thursdays, including March 2, 2000. In addition, he presented three alibi witnesses—his brother-in-law, his uncle, and a close friend. Petitioner's brother-in-law, Mohammed Miazee, lived in petitioner's house during June and July of 1999. He testified that during those months he was with petitioner almost all of the time on petitioner's days off and never observed inappropriate contact between petitioner and the child. Akhtar Houssain, petitioner's close friend, testified that he lived in petitioner's house from August 1999 through September 1999, and that when he was not living there he always visited petitioner on his days off. During those times, he never observed anything unusual between petitioner and the child.

Houssain and petitioner's uncle, Nazrul Ashan, testified that they were with petitioner on March 2, 2000. Ashan arrived at petitioner's house shortly before petitioner brought the child home from school. According to Ashan, petitioner applied Vicks VapoRub on the child's neck and made soup for her. After the child fell asleep on the couch, petitioner and Ashan left her in the house with petitioner's tenant. Petitioner and Ashan went out to the bank and spent a couple of hours running errands. Houssain met petitioner and Ashan at the bank and stayed with petitioner at his house until Michelle came home that night.

Two medical doctors testified for the prosecution. Both agreed that the child had no

3

physical injuries and that there was no forensic evidence that she had been sexually abused. Dr. Lordana Ladogana, the child's primary physician, examined her on March 14, 2000, approximately two weeks after the last alleged incidence of abuse. She found an intact hymen, no vaginal bruising, no evidence of irritation, no discharge, and no evidence of abnormality in the surrounding area. (Tr. 684.) She noted mild redness within normal limits. (Tr. 689.) Dr. Ladogana opined that the lack of physical evidence was consistent with the child's allegations that petitioner had touched her several weeks before. (Tr. 687.) Defense counsel briefly cross-examined Dr. Ladogana, primarily asking her to confirm that the observed redness was within normal limits. (Tr. 689.) Dr. Margaret McHugh, Director of the Child Protective Team at Bellevue Hospital, examined the child more thoroughly on March 17, 2000. Like Dr. Ladogana, she found an intact hymen and no evidence of bruising or trauma, (Tr. 737-38), and noted slight irritation around the child's urethra that could have been caused by urinary incontinence or other chronic wetness (Tr. 746-47). She, too, opined that the lack of physical evidence was not inconsistent with fondling. (Tr. 753.) On cross-examination, counsel simply asked Dr. McHugh to reiterate that there was no physical evidence of trauma. (Tr. 756.)

A child psychologist also testified as an expert for the prosecution. She explained that children often delay disclosing abuse, particularly when a family member is involved, as part of a pattern of behavior referred to as child sexual abuse syndrome. On cross-examination, petitioner's counsel questioned the psychologist about the ability of children to fabricate abuse charges and the increased likelihood of fabrication in cases involving families with matrimonial, divorce or custody issues. The psychologist testified that, in her particular experience with cases involving younger children, allegations of abuse are fabricated approximately ten percent of the

4

time. (Tr. 832.) In cases involving matrimonial, divorce or custody disputes, the incidence of fabrication by younger children rises to approximately thirty percent. (Tr. 832.) On re-direct, she testified that a Colorado study that included a broader range of cases than were typically referred to her indicated that fabrication occurred at an overall rate of approximately six percent and that most of those cases involved adolescents. (Tr. 842.)

Petitioner was convicted of one of the three counts of first-degree sexual abuse (touching the child's buttocks), endangering the welfare of a child, and second-degree criminal contempt.[1] He was sentenced on June 14, 2001, to five years for first-degree sexual abuse and to one year for each of the other counts, concurrently.

## Procedural History

Prior to perfecting his appeal, petitioner moved pursuant to New York Criminal Procedure Law § 440 to vacate his conviction, challenging the trial court's Allen charge and the sufficiency of the evidence of second-degree criminal contempt. Petitioner's motion was denied on the ground that the claims were on-the-record and had to be raised on direct appeal. Petitioner, *pro se*, filed a second motion to vacate raising a number of different claims including

---

[1] At the close of the prosecution's case, the trial court dismissed two counts: criminal contempt in the first degree—on the ground that there was no proof that petitioner called the house with the intent to harass, annoy, threaten or alarm the child; and one of the three counts of sexual abuse in the first degree—on the ground that the count charged that on March 2, 2000, petitioner touched the child's breasts with his hand and she testified that he kissed them. Petitioner was acquitted of second-degree course of sexual conduct against a child (requiring a finding that between June 1999 and February 2000, petitioner engaged in two or more acts of sexual conduct with the child), one of the three counts of first-degree sexual abuse (requiring a finding that petitioner touched the child's vagina with his hand on March 2, 2000), and third-degree tampering with a witness.

5

that counsel was ineffective for failing to adequately investigate the case. Again, the motion was denied on the ground that petitioner's claims were on-the-record and had to be raised on direct appeal. Based on the record before the Court, petitioner did not seek leave to appeal either ruling.

Petitioner, represented by new counsel, appealed his conviction, raising myriad claims of ineffective assistance including that counsel was ineffective in his cross-examination of key prosecution witnesses. In addition, he faulted counsel for not presenting expert testimony. He also challenged the sufficiency of the evidence with respect to both first-degree sexual abuse and endangering the welfare of a child, and he claimed prosecutorial misconduct.

On October 14, 2003, the Appellate Division affirmed petitioner's conviction. People v. Affser, 765 N.Y.S.2d 530 (App. Div. 2003). After noting that petitioner's sufficiency claim was, "in part, unpreserved for appellate review," the court rejected the claim on the merits. Id. at 531. Petitioner's ineffective assistance of counsel claim was also rejected as meritless. Id. The court ruled that petitioner's prosecutorial misconduct claims were "largely unpreserved" and that "[i]n any event, while a few of the prosecutor's questions, remarks, and comments were improper," reversal was not required. Id. On December 15, 2003, the New York Court of Appeals denied petitioner's application for leave to appeal. People v. Affser, 1 N.Y.3d 567 (2003).

In the application before this Court, petitioner raises claims of ineffective assistance of trial counsel, prosecutorial misconduct, and ineffective assistance of appellate counsel. In addition, he contends that he was denied a fair trial as a result of the court's Allen charge.

## Discussion

I. Ineffective Assistance of Trial Counsel

    A. Exhausted Claims

Petitioner continues to press his claim that counsel's cross-examination of various witnesses was ineffective, and he faults counsel for failing to call any expert witnesses. These claims were properly raised on appeal in state court and were rejected on the merits.[2] Citing People v. Henry, 95 N.Y.2d 563 (2000) and People v. Baldi, 54 N.Y.2d 137 (1981), the Appellate Division concluded that "[a] review of the record in its entirety without giving undue significance to retrospective analysis indicates that the defendant received meaningful and effective representation." Affser, 765 N.Y.S.2d at 531.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may grant relief on these claims only if the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Because, as set forth below, these ineffective assistance of counsel claims are meritless even under a *de novo* standard of review, the state court's rejection of them was neither contrary to nor an unreasonable application of federal law.

---

[2] Although respondent groups petitioner's failure to call an expert claim with his unexhausted claim that counsel failed to consult an expert, it appears that petitioner exhausted the failure to call claim on appeal. In addition to arguing that counsel was unprepared to try the case because he did not know whether *petitioner* had been examined by a doctor that might testify, he challenged counsel on the ground that "all of the expert opinion came from the People's witnesses." (Def.'s Br. at 27.)

7

B. Unexhausted Claims

Petitioner reiterates his claim that counsel failed to adequately investigate. He presented this off-the-record claim to the state trial court in his second motion to vacate. It was erroneously rejected, however, on the ground that it had to be brought on appeal, but petitioner neither raised the claim on appeal nor sought leave to appeal the denial of the motion to vacate.

Petitioner makes a number of claims for the first time, including that counsel was ineffective for failing to adequately preserve claims that the prosecutor engaged in numerous instances of inappropriate questioning. He also argues that counsel failed to obtain school and medical records of the victim to determine whether they could be used to challenge her credibility, failed to consult with a medical expert regarding abuse indicia, failed to consult with petitioner on important issues in the case, and failed to secure petitioner's presence before the grand jury.

The claim that counsel was ineffective for failing to preserve various claims of prosecutorial misconduct appears to be defaulted because petitioner did not raise it on appeal despite its basis in the record. Nevertheless, respondent has not argued that this claim is procedurally barred, and this Court is not obligated to raise the issue *sua sponte*. See Jimenez v. Walker, 458 F.3d 130, 141 n. 8 (2d Cir. 2006) ("Because the existence of an adequate and independent procedural bar is not jurisdictional in the habeas context, a federal court is not required to raise it *sua sponte*; rather, it is 'a defense that the State is obligated to raise and preserve if it is not to lose the right to assert the defense thereafter.'" (quoting Trest v. Cain, 522 U.S. 87, 89 ( 1997))). Respondent does argue that the other new claims are unexhausted and procedurally defaulted. But those claims are not necessarily defaulted. Petitioner could raise them in yet another motion to vacate, and under § 440.10(3)(c) the state court could, in its

8

discretion, review the claims on their merits despite petitioner's failure to assert them in his previous motion to vacate. Cf. Murden v. Artuz, 497 F.3d 178, 192 (2d Cir. 2007) (discretionary rule of C.P.L. § 440.10(3)(c), when invoked by state court to reject a claim as procedurally barred because it could have been raised in a prior motion, constitutes an independent and adequate state procedural bar to habeas review).

In any case, the Court may reject petitioner's unexhausted claims on the merits, 28 U.S.C. § 2254(b)(2), and does so for the reasons set forth below.

C. Merits

To demonstrate constitutionally ineffective assistance, petitioner must show (1) that counsel's performance "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that petitioner was prejudiced by the deficient performance, id. at 692. To satisfy the prejudice prong, petitioner "must show more than that the unprofessional performance merely 'had some conceivable effect.'" Id. at 693. Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

In the abstract, petitioner's most significant allegation of ineffective assistance is that counsel failed to consult with or call an expert. Petitioner raised this claim in part on appeal, contending that counsel was ineffective because "all of the expert opinion came from the People's witnesses." (Def.'s Br. at 27.) Petitioner now amplifies the claim to argue that counsel was ineffective for failing to contact an expert "either to testify or (at least) to educate himself on the vagaries of abuse." (Pet'r's Addendum at 1.) Specifically, petitioner contends that an expert could

9

have provided an explanation, other than abuse, for the prosecution experts' findings.[3]

Given the specifics of this case, however, counsel's decision not to consult with or call a medical expert clearly was not objectively unreasonable, nor did it result in prejudice. Despite petitioner's assertion that an expert would have been able to offer an alternate explanation for the medical findings, petitioner does not suggest any possible more favorable interpretation, nor is one apparent to this Court. Indeed, the prosecution experts merely testified that the absence of physical evidence was not inconsistent with the child's allegations of touching.

Petitioner's case is easily distinguishable from Lindstadt v. Keane, 239 F.3d 191 (2d Cir. 2001), Eze v. Senkowski, 321 F.3d 110 (2d Cir. 2003), and Pavel v. Hollins, 261 F.3d 210 (2d Cir. 2001), three sexual abuse cases in which the Second Circuit held that failure to consult or call a medical expert was an error that, in combination with other errors, could amount to ineffective assistance. Cf. Gersten v. Senkowski, 426 F.3d 588, 609 (2d Cir. 2005) ("As the district court correctly noted '[t]here is no per se rule that requires trial attorneys to seek out an expert.' We do not even mean to hold that expert consultation is always necessary in order to provide effective assistance of counsel in child sexual abuse cases . . . .") (internal citation omitted). In Lindstadt and Eze, medical experts testified that minimal physical evidence was indicative of sexual abuse including vaginal penetration. See Lindstadt, 239 F.3d at 195-96; Eze, 321 F.3d at 115-16. In Eze, as in Lindstadt, "the physical evidence [was] less than conclusive and open to interpretation," heightening the importance of expert consultation. Id. at 128. In Pavel, there was "an obvious, commonsense mismatch" between the complete lack of physical evidence in the case of one of the

---

[3] In petitioner's words, an expert "would have been able to describe for the court whether the findings of the People's expert were possible through other means." (Id.) (emphasis in orginal).

victims, and the minimal physical evidence in the case of the other victim, and the allegations the victims made that they were anally sodomized at least weekly. Id., 261 F.3d at 224. Pavel's counsel failed "to drive this disparity home" with expert testimony. Id. at 224-225. In contrast, in petitioner's case, as a matter of commonsense, the lack of physical evidence was to be expected because the allegations were limited to fondling. Moreover, unlike Lindstadt, Eze, and Pavel, no prosecution expert interpreted the physical evidence as affirmatively indicative of abuse. Thus, petitioner's case did not turn on defense counsel's understanding the "vagaries of abuse indicia." Eze, 321 F.3d at 128 (quoting Pavel, 261 F.3d at 224 and Lindstadt, 239 F.3d at 201).

Petitioner's criticism of counsel's cross-examination of various prosecution witnesses is also without merit. Petitioner has not "overcome the presumption that, under the circumstances, the challenged action[s] might be considered sound trial strategy." Strickland, 466 U.S. at 689 (internal quotations omitted). "[D]ecisions which fall squarely within the ambit of trial strategy. . . , if reasonably made, will not constitute a basis for an ineffective assistance claim." United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987), and "[d]ecisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature." Id., quoted in Eisen, 974 F.2d 246, 265 (2d Cir. 1992). For the reasons detailed in respondent's brief on appeal (See Resp't's Br. at 21-23), counsel's cross-examination was competent. Moreover, counsel succeeded in bringing out testimony on cross-examination of the child psychologist that supported his theory of defense that the charges were fabricated.

Petitioner's claims that counsel failed to adequately investigate and failed to obtain school and medical records of the child to determine whether they could be used to challenge her credibility are vague and conclusory. Petitioner does not state with any particularity which

11

potential witnesses or other avenues counsel failed to explore. Further, it is unclear how school and medical records could have been used to challenge the child's credibility. Indeed, school records corroborated her testimony that petitioner took her home from school early on March 2, 2000, and, consistent with her allegations of touching, her medical records indicated no physical signs of abuse. Such vague and conclusory allegations cannot be the basis for relief as petitioner has not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, nor has he demonstrated prejudice, see id. at 692. See also Polanco v. United States, Nos. 99 Civ. 5739, 94 CR. 453, 2000 WL 1072303, at *10 (S.D.N.Y. Aug. 3, 2000) ("Such undetailed and unsubstantiated assertions that counsel failed to conduct a proper investigation have consistently been held insufficient to satisfy either Strickland prong.") (collecting cases).

Petitioner's undeveloped claim that counsel failed to consult with him on "important issues" regarding the case is similarly too vague to support a claim for relief. See Rosario v. Bennett, No. 01 Civ. 7142, 2002 WL 31852827, at *29 (S.D.N.Y. December 20, 2002) ("bare allegation" that counsel failed to consult with petitioner about facts of case and conduct of trial denied as "hopelessly vague"). Moreover, petitioner's assertion is belied by the record. As discussed in the wake of counsel's application to be relieved at the close of the prosecution's case, petitioner and counsel had been arguing daily over the case. (Tr. 887.)

With respect to his claim that counsel was ineffective for failing to preserve certain prosecutorial misconduct claims, petitioner cannot demonstrate prejudice under Strickland because, as discussed below, the Appellate Division addressed these claims and rejected them on the merits. See Waters v. McGuiness, No. 99-CV-0615, 2003 WL 21508318, at *3 (E.D.N.Y.

12

June 16, 2003) ("The Appellate Division reached the merits of the claim on direct appeal . . . . Even if counsel was ineffective for failing to preserve the claim, therefore, petitioner was not prejudiced because the Appellate Division entertained the claim and rejected it on the merits.").

Finally, counsel's alleged failure to secure petitioner's presence before the grand jury does not constitute ineffective assistance. See Davis v. Mantello, 42 Fed. Appx. 488, 491 n.1 (2d Cir. 2002) ("A defendant's right to testify before the grand jury is not a constitutional right; rather, it is a statutorily created right. N.Y.Crim. Proc. Law § 190.50(5). New York courts have consistently held that counsel's failure to ensure that the defendant testifies before the grand jury does not [by itself] amount to ineffective assistance of counsel." See, e.g., Kohler v. Kelly, 890 F.Supp. 207, 213 (W.D.N.Y. 1994) (citing New York cases), aff'd, 58 F.3d 58 (2d Cir.1995); People v. Hunter, 564 N.Y.S.2d 391, 392 (App. Div. 1991); People v. Hamlin, 544 N.Y.S.2d 859, 860 (App. Div. 1989)).


II. Prosecutorial Misconduct

On appeal, petitioner claimed that the prosecutor conducted improper direct and cross examinations and made inappropriate remarks and facial expressions throughout the trial. He also criticized the prosecutor's summation. The Appellate Division concluded that petitioner's claims were "largely unpreserved for appellate review," and further ruled that "[i]n any event, while a few of the prosecutor's questions, remarks, and comments were improper, the prosecutor's conduct does not require reversal." Affser, 765 N.Y.S.2d at 531. Petitioner does not elaborate on the claims he raises here beyond stating "prosecutor misconduct" as part of ground one of his petition. The Court assumes he intends to press the same prosecutorial misconduct claims he

raised on appeal.

"[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989) (internal quotation marks and citation omitted); cf. Jimenez v. Walker, 458 F.3d 130, 145 (2006) ("[T]he state may successfully assert that habeas relief is foreclosed provided that the independent state procedural bar is adequate to support the judgment and that neither cause and prejudice nor a fundamental miscarriage of justice is shown."). Here, because the Appellate Division decision does not indicate which claims were unpreserved, the decision is construed as one on the merits to which AEDPA deference applies. See Id. ("Absent a clear and express statement of reliance on a state procedural bar, the Harris presumption applies to decisions [fairly appearing to rest primarily on federal law or to be interwoven with federal law] and deems them to rest on the merits of the federal claim. Such decisions are not procedurally barred and must be afforded AEDPA deference as adjudications 'on the merits' under 28 U.S.C. § 2254(d)."); see also Warren v. Ercole, No. 07 CV 3175, 2007 WL 4224642, *6 (E.D.N.Y. November 27, 2007) (prosecutorial misconduct claim not procedurally barred where Appellate Division stated claim was "largely unpreserved" and proceeded to decide merits). In any case, even under a *de novo* standard of review, habeas relief is not warranted.

Although, as the Appellate Division acknowledged, "a few of the prosecutor's questions, remarks, and comments were improper," her conduct was not the type of "egregious misconduct," Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974), generally required to give rise to a constitutional claim. Comments and questions by a prosecutor, even if "undesirable" or

14

"universally condemned," do not amount to constitutional error warranting habeas relief unless they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks and citations omitted). In determining whether a prosecutor's improper remarks have caused "substantial prejudice" resulting in a denial of due process, the Court considers "the severity of the misconduct[,] the measures adopted to cure the misconduct[,] and the certainty of conviction absent the improper statements." Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990) (quoting United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981) (per curiam)).

For the reasons detailed in respondent's brief on appeal (Resp't's Br. at 29-34), petitioner's allegations of improper questioning by the prosecutor on direct-examination are largely meritless and do not require reversal. To the extent that the questions put to the child were leading without permission of the trial court and to the extent the questions put to Michelle improperly inquired about her state of mind, the trial court generally sustained petitioner's objections before the questions were answered.

Similarly, for the reasons detailed in respondent's brief on appeal, petitioner's allegations of improper cross-examination of defense witnesses, including petitioner, do not warrant relief. (Id. at 36-40.) The trial court sustained petitioner's relevancy objections to the prosecutor's questioning of Miazee, and the prosecutor abided by the court's instructions and rulings regarding her inquiry into Houssain's domestic issues. Moreover, the record reflects that the prosecutor remained behind the podium as required by the court. The trial court also sustained various objections to the questions the prosecutor asked petitioner that were improperly phrased or argumentative. In addition, the court explicitly admonished the prosecutor for the inappropriate

15

remark—"I want to hear this"—that she made when approaching the bench for a sidebar to discuss whether petitioner could answer a question as to what kind of woman excited him, (Tr. 1218), and instructed the jury to ignore the remark (Tr. 1222). The prosecutor's questioning of petitioner on the subject of his sexual conduct in the child's presence, however, was entirely appropriate given petitioner's contention that the child had asked him to hug and kiss her the way he hugged Michelle and his admission that he engaged in sexual activity with Michelle in the family bedroom while the child was awake.

Petitioner also challenges several remarks made by the prosecutor in summation. He contends that the prosecutor improperly denigrated his defense by characterizing his fabrication theory—specifically that the child had witnessed sexual relations between petitioner and her mother and fabricated the charges based upon this knowledge—as "ridiculous." (Tr. 1576-77, 1580.) In addition, he claims the prosecutor improperly vouched for the credibility the child by noting that she had no motive to lie and that "she didn't try to make something up," (Tr. 1553), when she did not know the answer to a question. He also argues that the prosecutor appealed to the sympathy of the jury when she noted that the child had been "betrayed" by "the person who should have been keeping her safe" and that she had "bravely" faced him in court. (Tr. 1620.) For the reasons stated on appeal, (Resp't's Br. at 42-45), the these remarks and the others petitioner challenges do not warrant reversal.


III. Ineffective Assistance of Appellate Counsel

Petitioner complains in conclusory terms that appellate counsel was ineffective for failing to present any argument that resulted in a reversal of his conviction. Because petitioner has never

raised an ineffective assistance of appellate counsel claim in state court, this claim is clearly unexhausted. In any case, relief is denied. <u>See</u> 28 U.S.C. § 2254(b)(2) (unexhausted claims may be denied).

As with ineffective assistance of trial counsel, to demonstrate constitutionally ineffective appellate counsel, petitioner must show (1) that counsel's performance "fell below an objective standard of reasonableness," <u>Strickland</u>, 466 U.S. at 688, and (2) that petitioner was prejudiced by the deficient performance, <u>id.</u> at 692. <u>See Aparicio v. Artuz</u>, 269 F.3d 78, 95 (2d Cir. 2001); <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994). Because appellate counsel is not required to advance every possible colorable claim, to satisfy the first prong of <u>Strickland</u> petitioner must show more than that counsel merely omitted a nonfrivolous argument. <u>Aparicio</u>, 269 F.3d at 95 (citing <u>Evitts v. Lucey</u>, 469 U.S. 387, 394 (1985) and <u>Jones v. Barnes</u>, 463 U.S. 745, 754 (1983)). Indeed, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." <u>Jones</u> 463 U.S. at 751-52.

Petitioner's appellate counsel filed a thirty-eight page brief, including seventeen pages of argument raising claims of ineffective assistance of trial counsel, prosecutorial misconduct and sufficiency of the evidence. Counsel outlined in detail more than twelve separate alleged instances of ineffective assistance of trial counsel and more than twenty-four alleged instances of prosecutorial misconduct. Petitioner fails to identify with any specificity the claims appellate counsel did not but should have raised and appears to fault her merely for failing to secure a reversal.

To the extent petitioner means to object to appellate counsel's failure to raise the claims he

brings for the first time on habeas, he has not satisfied <u>Strickland</u>. Petitioner's contentions that trial counsel failed to investigate, failed to obtain school and medical records of the child, failed to consult an expert, failed to consult with petitioner, and failed to secure petitioner's presence in the grand jury all relate to matters outside the record that could not have been properly raised by counsel on appeal. To the extent petitioner faults appellate counsel for not claiming ineffective assistance of trial counsel based on counsel's failure to preserve his claims of prosecutorial misconduct, petitioner cannot demonstrate prejudice. Despite the Appellate Division's conclusion that petitioner's claims of prosecutorial misconduct were "largely unpreserved for appellate review," the court did address them and determined that reversal was not required. <u>Affser</u>, 765 N.Y.S.2d at 531.

IV. <u>Allen</u> Charge

Referring to his motion pursuant to N.Y. Criminal Procedure Law § 440 filed prior to his direct appeal, petitioner again raises the claim that he was denied a fair trial as a result of a coercive <u>Allen</u> charge. The claim was rejected by the § 440 court because "the issues . . . appear on the face of the record and must therefore be raised on direct appeal." <u>People v. Affser</u>, #1938-00, October 4, 2001 (Buchter, J). The court noted that "were [it] to address the merits," the claim would be denied because the charge "delivered a balanced instruction stressing the jurors' duty to impartially consider the evidence and try to reach an agreement without surrendering their individual views." <u>Id.</u> at 5 (internal quotation marks and citation omitted).

Despite the state court's direction, petitioner did not raise the claim on appeal. He cannot now bring it in a state court collateral attack. N.Y. Crim. Proc. Law § 440.10(2)(c); <u>See also</u>

18

Aparicio, 269 F.3d at 91 (claims defendant unjustifiably failed to raise on direct appeal cannot be raised on a collateral attack). Thus, absent a showing of cause for the default and prejudice therefrom, or that a miscarriage of justice will result, the claim cannot be reviewed by this Court. See Coleman v. Thompson, 501 U.S. 722, 748-50 (1991); Aparicio, 269 F.3d at 90. Petitioner has not made such a showing.

In any case, petitioner's claim is meritless. In order to provide a basis for habeas corpus relief, a challenged jury instruction must be "not merely . . . undesirable, erroneous, or even 'universally condemned,'" but also must violate a right guaranteed by the Fourteenth Amendment of the Constitution. Cupp v. Naughten, 414 U.S. 141, 146 (1973). An instruction, even if faulty, must "so infect[] the entire trial that the resulting conviction violates due process." Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001) (quoting Cupp, 414 U.S. at 147) (internal quotations omitted). To determine whether an Allen charge was unduly coercive, violating due process, the Court must analyze the charge "in its context and under all the circumstances." Lowenfield v. Phelps, 484 U.S. 231, 237 (1988) (quoting Jenkins v. United States, 380 U.S. 445, 446 (1965)).

In this case, the jury was instructed as follows:

> You each solemnly promised that you would tell the other your views based on the evidence and the law, and you would try to convince the other that you are correct. You have the right to expect that the other jurors will listen carefully to you and give you an honest chance to change their minds.
> On the other hand, you each also promised that you would listen carefully to the other jurors and would give each of them an honest chance to change your mind. There is no shame in changing your mind *if you are convinced from the evidence and the law that you should.*
> *You should not change your mind for any other reason*, such as the hour is late and that you want to get out or that you are being outvoted on the ballot, even if the vote is eleven to one against you.

19

(Tr. 1698) (emphasis added). Petitioner appears to contend that the charge was coercive in that it impermissibly shifted the burden of proof by obligating the jurors to convince each other and provide an explanation for their positions. This Court disagrees.

As the Second Circuit articulated in Smalls v. Batista, 191 F.3d 272, 280 (2d Cir. 1999), "[u]nder proper circumstances and in the context of a given charge, mere use of the word 'convince' might not impermissibly shift the burden of proof, nor render the charge inherently coercive." The charge in Smalls was held "unconstitutionally coercive because it *both* (1) obligated jurors to convince one another that one view was superior to another, *and* (2) failed to remind those jurors not to relinquish their own conscientiously held beliefs." Id. at 278. Generally, an Allen charge that instructs jurors to consider one another's views or convince each other must caution jurors not to abandon their conscientiously held beliefs. See Spears v. Greiner, 459 F.3d 200, 205 (2d Cir. 2006) ("This Court has applied the Lowenfield standard to find that when an Allen charge directs jurors to consider the views of other jurors, specific cautionary language reminding jurors not to abandon their own conscientious beliefs is generally required.") (citing as examples United States v. Henry, 325 F.3d 93, 107 (2d Cir. 2003) and Smalls, 191 F.3d at 280).

Considering the charge in this case in its entirety, the jurors were directed to share their views with an openness to changing their minds if "convinced from the evidence and the law." The charge encourages jurors to consider the views of others, but admonishes them not to change their views for any other reason including that other jurors disagree or for the purpose of returning a verdict. Because the jurors were specifically reminded that a decision to change a vote should be based on the evidence and the law, the charge was not unduly coercive.

20

## Conclusion

The application for a writ of habeas corpus is denied, and the petition is dismissed. Because petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue. In addition, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962). The Clerk of the Court is directed to close this case.


SO ORDERED.


Dated: Brooklyn, New York
      July 21, 2008


                       RAYMOND J. DEARIE
                       United States District Judge